UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GARGANUS T. MOORE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HEFLIN,<br>KENDRA ANN STOCK,<br><br>Defendants. | ) | No. 1:25-cv-00095-JRO-CSW |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Garganus Moore, proceeding *pro se*, alleges in this 42 U.S.C. § 1983 lawsuit that Defendants Dr. John Heflin and Kendra Stock violated his Eighth Amendment rights by failing to provide adequate medical care for his injured thumb. Dkt. 17. Moore seeks injunctive relief and damages. *Id.* The Defendants moved for summary judgment on Moore's injunctive relief claims, dkt. 29. and moved for summary judgment on all remaining claims, dkt. 40. For the reasons explained below, the Court **GRANTS** both motions dkts. [29], [40].

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. RELEVANT PROCEDURAL HISTORY

On July 30, 2026, the Court notified the parties that it would convert the Defendants' Motion to Dismiss Moore's claims for injunctive relief to a motion for summary judgment because it relied on materials outside the pleadings. Dkt. 49. In doing so, the Court directed Moore to respond to the converted motion for summary judgment and extended Moore's deadline to respond to the Defendants' pending motion for summary judgment on Moore's Eighth Amendment claims

for damages. *Id.* Moore has since responded, indicating that he did not receive the Defendants' previous motions because he was released from prison and then reincarcerated. Dkt. 50. Moore broadly responds to the arguments in both motions for summary judgment and designates the exhibits that he attached to his amended complaint as evidence. *See* dkt. 8-1. Given Moore's *pro se* status, the Court will review Moore's exhibits as part of the record at summary judgment.

## II. FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Moore and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572.

Moore is an inmate in the custody of the Indiana Department of Correction. Dkt. 50 at 2. During the events in this lawsuit, Moore was incarcerated at Correctional Industrial Facility ("CIF"). Dkt. 8 at 7–8.

Defendant Dr. John Heflin is a physician licensed in Indiana who worked at CIF during the events in this lawsuit. Dkt. 40-1 at ¶ 2. Defendant Kendra Ann Stock is a registered nurse, licensed in Indiana. Dkt. 40-3 at ¶ 2. During the events in this lawsuit, Stock was the Health Services Administrator ("HSA") at CIF. *Id.* at ¶ 3. As HSA, Stock did not oversee or make medical treatment decisions. *Id.* at ¶¶ 6–7. Instead, she was responsible for ordering medical supplies, hiring nursing staff, maintaining the nursing schedule, and communicating with the prison administration. *Id.* at ¶ 4. She occasionally

assisted grievance staff at CIF by providing information from an inmate's medical record so that grievance staff could respond to grievances. *Id.*

On July 7, 2024, Moore was assessed by a nurse after being attacked by other inmates at CIF. Dkt. 40-2 at 1–4. The nurse noted that Moore's left arm, from his wrist to his elbow, was swollen and bruised and consulted with Dr. Heflin, who ordered an x-ray. *Id.* at 4. On July 14, Moore saw a nurse again after he complained about dizzy spells, knots on his head, and the previously complained about arm injury. *Id.* at 5–7. The nurse ordered a follow-up with Dr. Heflin. *Id.*

On July 17, Dr. Heflin examined Moore for his complaints about dizziness, headaches, and inability to get into his bunk. *Id.* at 8. Dr. Heflin noted that the x-ray results were normal and he prescribed Tylenol and Ibuprofen and ordered a bottom bunk pass. *Id.* at 10.

On July 25, Moore submitted a healthcare request form complaining about pain in his left thumb and stating that it might be broken. *Id.* at 13. The nurse noted that Moore had limited range of motion and advised him to ice his thumb. *Id.* at 15.

On July 31, Dr. Heflin examined Moore's thumb. *Id.* at 17. Dr. Heflin ordered an x-ray of the thumb, continued the prescription for Tylenol, and advised Moore to limit his activity. *Id.* at 19. Dr. Heflin reviewed the x-ray results on August 5, noting that they did not show a "bony abnormality." *Id.* at 21; dkt. 40-1 ¶ 7.

On August 14, Moore met with a nurse after complaining about nonstop headaches and vomiting. Dkt. 40-2 at 22. Moore stated that the Tylenol was not working and that he wished to see Dr. Heflin again. *Id.* at 24. Two days later, Moore met with a nurse again after complaining about thumb pain. *Id.* at 25. He told the nurse that he thought he had ligament or tendon damage to his thumb. *Id.* The nurse referred him to Dr. Heflin and advised Moore to use an ACE wrap and apply ice. *Id.* at 27. Moore declined Tylenol. *Id.*

Dr. Heflin met with Moore on August 23 to assess his thumb pain. *Id.* at 29. Dr. Heflin noted that Moore's thumb was swollen, had decreased range of motion, and caused pain with any movement. *Id.* Dr. Heflin noted that the x-ray did not show abnormalities and referred Moore to the physical therapist as well as ordering Tylenol and Ibuprofen. *Id.* at 31.

Moore met with the physical therapist on August 31, who noted mild to moderate limitations in the thumb joint and severe limitations in flexion. *Id.* at 41–42. The physical therapist wrote that the condition was consistent with game keepers thumb and recommended exercises and a thumb brace. *Id.* at 42.

On September 30, Moore informed a nurse that the therapeutic squeeze ball prescribed by the physical therapist helped "somewhat," but his left thumb still hurt. *Id.* at 45. During his chronic care appointment with Dr. Heflin on October 4, Moore also complained about thumb pain. *Id.* at 50. Dr. Heflin noted that a follow-up physical therapy appointment was scheduled and that Moore should continue the home exercises and take Tylenol and Ibuprofen as needed. *Id.*

During Moore's physical therapy appointment on October 26, the therapist noted improved range of motion, but continued pain. *Id.* at 53. He recommended a thumb spica splint, which Moore received on November 15. *Id.* at 53, 59; Dkt. 8-1 at 19. On November 8, a nurse emailed Dr. Heflin reporting that Moore informed her that none of the treatment was working, but that he had full range of motion in his thumb. Dkt. 40-2 at 57–58; *see* dkt. 8-1 at 15. The nurse reported that she told Moore that an MRI or surgery was not needed because he had full use of his digits. Dkt. 40-2 at 57–58. Dr. Heflin did not make a referral. *Id.* at 58; Dkt. 40-1 ¶ 12.

On November 4, Moore filed a grievance complaining that Dr. Heflin had waited five months "hoping my thumb injury will heal itself." Dkt. 8-1 at 5. He stated that he believed that it would be another two months before Dr. Heflin decided to schedule an MRI, all the while he suffered in pain. *Id.* The grievance specialist responded that Defendant Stock reviewed Moore's records and found that he had been seeing a physical therapist who noted improvement with his thumb. *Id.* at 4. She noted that Dr. Heflin ordered the splint pursuant to the physical therapist's orders and planned to follow the treatment plan. *Id.* Then, she stated, "[t]his is the correct treatment plan to follow, if the splint and continued PT does not help, then an MRI would be the next step." *Id.* Stock testified that she was not involved in Moore's medical care or in deciding when to schedule diagnostic testing. Dkt. 40-3 ¶¶ 10–11.

Moore met with the physical therapist again on December 7. Dkt. 40-2 at 60–62. The physical therapist noted that Moore's pain had improved by using

the splint and that he was able to make a fist despite some stiffness in his hand. *Id.* at 60. The therapist also noted that if Moore's symptoms did not resolve, then referral to a hand specialist would be recommended. *Id.*

On December 12, a nurse emailed Dr. Heflin to convey Moore's complaints about continued pain. *Id.* at 63–64. The nurse advised Moore to continue to wear the thumb brace and give it time to heal. *Id.* at 64. Dr. Heflin did not have any further involvement in Moore's treatment because Moore was transferred to a different facility on January 14, 2025. Dkt. 40-1 ¶ 14. Moore filed the instant civil rights action on January 14 as well. Dkt. 1.

Dr. Heflin testified that he did not order an MRI while Moore was at CIF because Moore's thumb x-ray was normal and did not show a need for further diagnostic testing. Dkt. 40-1 ¶ 16. Moore's pain was being treated with over-the-counter medication, and Dr. Heflin believed that he needed to exhaust his treatment with the physical therapist before Dr. Heflin decided whether further testing was necessary. *Id.*

After Moore arrived at the new facility, the medical provider ordered another x-ray in February 2025. Dkt. 40-2 at 71. The x-ray did not show "bony" fractures, dislocation, inflammation, soft tissue emphysema, or a soft tissue abnormality. *Id.* The radiologist recommended a "follow-up evaluation with MRI as clinically warranted or if symptoms persist or worsen." *Id.*

In April 2025, the medical provider at the new facility ordered an MRI after noting that Moore tried and failed multiple conservative treatment plans. *Id.* at

74–75. The MRI did not detect a ligament sprain, tear, soft tissue hematoma, or other abnormality. *Id.* at 81.

## III. DISCUSSION

### A. Injunctive Relief

The Court's screening order allowed Moore to proceed on a claim for prospective injunctive relief related to the Defendants' delay in scheduling an MRI. The Defendants argue that this claim is moot because Moore received an MRI after he was transferred to another correctional facility and, after January 2025, he was no longer under their care. Therefore, they did not have authority over Moore's medical treatment. Dkt. 29. Moore's response concedes that he received an MRI and that he was transferred and later released before becoming reincarcerated. *See* dkt. 50 at 2.

Because Moore has received the relief that he requested, his claim for injunctive relief is moot. *See Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (noting request for injunctive relief becomes moot "once the threat of the act sought to be enjoined dissipates"). The Court **grants** summary judgment to the Defendants on the injunctive relief claim, dkt. 29.

### B. Eighth Amendment Claim for Damages

The Eighth Amendment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an

objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Moore's thumb injury was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Moore's] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (citing *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Thus, Moore "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728.

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

**1. Kendra Stock**

Liability for damages under § 1983 requires personal involvement. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Specifically, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the

alleged misconduct." *Id.* An administrative official, such as an HSA, cannot be personally liable for simply acting within the scope of his or her administrative duties. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (explaining that "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). Liability may arise, however, when an administrator "knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (internal citations and quotations omitted) (finding that prison officials may be personally liable where plaintiff submitted "coherent and highly detailed grievances and other correspondences" showing that he did not receive treatment for serious hand injuries (*Id.* at 782)).

Here, a reasonable jury could not conclude that Stock was personally involved in delaying medical treatment for Moore's thumb. She responded to one grievance by conveying information in Moore's medical record. Although the grievance response stated that Moore's treatment was "correct," it is undisputed that Stock did not have authority to change Moore's treatment or schedule additional diagnostic testing. Dkt. 8-1 at 4; Dkt. 40-3 ¶¶ 6–7. Furthermore, the contents of Moore's grievance and his medical record would not put an administrator on notice that his rights were being violated. Thus, the Court **grants** summary judgment for Stock.

### 2. Dr. John Heflin

The Seventh Circuit has held that a medical professional's deliberate indifference may be inferred when the defendant renders a treatment decision that departs substantially from accepted professional judgment, refuses to take instructions from a specialist, knowingly persists in an ineffective treatment, or inexplicably delays medical treatment. *Petties*, 836 F.3d at 729–30. As stated above, deliberate indifference requires more than negligence or even objective recklessness. *Id*.

In this case, a reasonable jury could not conclude that Dr. Heflin's treatment decisions reflect deliberate indifference. From the time that Moore first complained about thumb pain on July 25, 2024, Dr. Heflin consistently treated Moore's injury by ordering x-rays, prescribing over-the-counter pain medication, and referring Moore to physical therapy for specialized treatment. The thumb x-ray did not show abnormalities, which would have indicated the need for further diagnostic testing. Also, although Moore continued to feel pain, the physical therapist reported that Moore had restored range of motion and that his condition was improving with the thumb splint. Once Moore was transferred to a different facility, another x-ray confirmed that Moore did not have any abnormalities. Only after two more months of continued pain, did the medical provider at the new facility determine that an MRI was warranted. Then, the MRI revealed that Moore did not have a torn ligament or a condition that required further treatment. None of these facts demonstrate that Dr. Heflin knew about and consciously disregarded a serious risk to Moore's health.

Though Moore argues that Dr. Heflin should have ordered an MRI much sooner, there is no evidence that Dr. Heflin knew that an MRI was needed and refused to order it. As a medical professional, he exercised his judgment to try conservative measures first after not seeing any abnormalities in the x-ray. *See Dean*, 18 F.4th at 242 ("[A] choice among different types of diagnostic tests is a 'classic example of a matter for medical judgment.'" (quoting *Estelle*, 429 U.S. at 107)). Additionally, though it is undisputed that Moore suffered from pain, the evidence shows that Dr. Heflin did not ignore the pain; he treated it through a variety of methods, including medication and physical therapy. Importantly, the Eighth Amendment "does not guarantee a patient his preferred medication or a pain-free recovery." *Weightman v. O'Brien*, No. 24-1543, 2025 WL 487214, at *3 (7th Cir. Feb. 13, 2025) (citing *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 681 (7th Cir. 2023)). In sum, a jury could not infer deliberate indifference from Dr. Heflin's actions. The Court thus grants summary judgment for Dr. Heflin.

## IV. CONCLUSION

Defendants' motions for summary judgment, dkts. [29], [40], are **GRANTED.** Final judgment will issue in a separate entry.

**SO ORDERED**.

Date: 9/23/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

GARGANUS T. MOORE
526 South 25th St.
NEW CASTLE, IN 47362

All ECF-Registered Counsel of Record

Courtesy copy to:

GARGANUS MOORE
170307
PLAINFIELD CORRECTIONAL FACILITY
727 Moon Rd.
Plainfield, IN 46168